OPINION OF THE COURT
Leonard N. Cohen, J.
Defendant moves to dismiss the complaint for failure of plaintiff to timely serve a notice of claim under General Municipal Law § 50-e. It is conceded that plaintiff’s injury occurred on December 12, 1981. The notice of claim was filed on April 28, 1982.
*329 Plaintiff claims that her cause of action arises in medical malpractice and ordinary negligence and that she was under the continuous care and treatment of defendant from the date of the injury until April 26, 1982. Thus, plaintiff claims the notice of claim was timely as within the applicable Statute of Limitations.
Movant argues that the claim is barred for failure to comply with the mandatory condition precedent of General Municipal Law § 50-e and McKinney’s Unconsolidated Laws of NY § 7401 (L 1969, ch 1016, § 1, as amended) which mandate service of a notice of claim within 90 days after the claim arises. Further, movant urges that under Pierson v City of New York (56 NY2d 950), leave to serve a late notice of claim may not be granted if sought more than one year and 90 days after the accrual of the cause of action; the applicable Statute of Limitations in this claim against the municipality. In this case, leave has never been sought. Accordingly, movant seeks dismissal of the action.
The underlying facts of this case are as follows. The plaintiff was admitted to Harlem Hospital on December 11, 1981. On December 12,1981 she allegedly fell from her bed and sustained multiple injuries including but not limited to a fractured hip. The injuries required surgery and plaintiff remained hospitalized in Harlem Hospital until April 26,1982. Two days after her discharge, plaintiff filed her notice of claim. The malpractice generally alleged is defendant’s failure to properly supervise and care and treat plaintiff. Specifically, it is claimed that defendant failed to provide plaintiff with a safe hospital bed and a working call device connected to the nurses’ station. Plaintiff claims that the side railings of her bed were defective and not properly raised and that these conditions caused her to fall from the bed and sustain injury. Plaintiff also alleges the breach of a hospital regulation requiring that elderly patients have side rails raised while in bed. These alleged failures constitute, according to plaintiff, a departure from good and reasonable medical care and treatment and establish malpractice.
This court cannot agree with plaintiff’s characterization of this action. It is axiomatic that an action may be maintained against a hospital on the general theory of negligence or upon the more particularized theory of medical malpractice. (Morwin v Albany Hosp., 7 AD2d 582.) Simple negligence cases are those where the alleged negligent act is readily determined by the trier of fact based upon common knowledge, while malpractice involves the issue of the treatment received by the patient and usually requires a decision to be based upon testimony of con *330 flicting medical experts. (Hale v State of New York, 53 AD2d 1025.)
A medical malpractice case is based upon three component duties which a physician owes a patient, to wit, a duty to possess the requisite knowledge and skill such as is possessed by the average member of the medical profession, a duty to exercise reasonable and ordinary care in the application of such professional knowledge and skill, and the duty to use his or her best judgment in the application of this knowledge and skill (Pike v Honsinger, 155 NY 201; Hale v State of New York, supra). It is, of course, true that these duties may apply to persons other than doctors, including nurses and technicians and others. If a hospital’s employee’s acts require professional skill and judgment, then the complaint sounds in malpractice for which the hospital may be held liable. Otherwise, the triers of fact are presented with issues of ordinary negligence.
In the case at bar, the alleged defective equipment or the failure to properly secure plaintiff in her hospital bed involve issues of simple negligence, not departures from the requisite professional skill and knowledge necessary to properly treat a patient. In this case the alleged negligence was based upon omissions by employees of the hospital whose routine work required a minimum of skill and training. (Berg v New York Socy. for Relief of Ruptured & Crippled, 1 NY2d 499; Bing v Thunig, 2 NY2d 656; De Falco v Long Is. Coll. Hosp., 90 Misc 2d 164; Becker v City of New York, 2 NY2d 226; Phillips v Buffalo Gen. Hosp., 239 NY 188; Dillon v Rockaway Beach Hosp. & Dispensary, 284 NY 176.)
With respect to the fulfillment of a hospital’s obligations to its patients, it has been specifically held that as a general rule a hospital is not liable in negligence for the failure to erect bed rails, absent professional direction to do such. (Haber v Cross County Hosp., 37 NY2d 888, citing Grace v Manhattan Eye, Ear & Throat Hosp., 301 NY 660; Mossman v Albany Med. Center Hosp., 34 AD2d 263.) However, where a hospital establishes a rule that bed rails are to be erected in all cases where patients are over 50 years old, the general rule and exception do not apply. In Haber, the Court of Appeals noted that this commonsense hospital regulation adopted in recognition of the frailties of older patients does not require medical direction and only administrative action is needed to implement the rule. Administrative work is part of the service that a hospital provides and its failure to abide by its own rules is some evidence of negligence. (Haber v Cross County Hosp., supra; Danbois v New York Cent. *331 R.R. Co., 12 NY2d 234.) Accordingly, the allegations made herein sound in simple negligence, not as plaintiff asserts in medical malpractice.
Despite this finding, inquiry does not stop here. The court is faced with the novel question of whether public policy considerations justify the application of the continuous treatment rule to this case, albeit one for negligence, not malpractice.
The rationale for the continuous treatment rule rests on a number of doctrinal assumptions enumerated in Barrella v Richmond Mem. Hosp. (88 AD2d 379 [2d Dept 1982]). One rationale for the rule is that the trust and confidence that marks the physician-patient relationship puts the patient at a disadvantage to question the doctor’s techniques and gives the patient the right to rely upon the doctor’s professional skill without the necessity of interrupting a continuous course of treatment by instituting suit. (Greene v Greene, 56 NY2d 86; Borgia v City of New York, 12 NY2d 151.) The same might be said for plaintiff’s relationship with defendant hospital. While in a slightly different context, it has been noted that it would be anomalistic and contrary to the underlying legislative precepts and against the foundation upon which the continuous treatment doctrine rests to require that a patient interrupt the therapeutic efforts made on his or her behalf to serve a notice of claim, where such efforts or treatment related to the injury resulting from the alleged malpractice. (Marabello v City of New York, 99 AD2d 133 [2d Dept 1984].)
In the case at bar, it would appear from the facts submitted that the plaintiff, from the date of her injury until two days prior to her service of the notice of claim, was under the complete control of the defendant. Whether the facts herein constitute continuous treatment is an issue of fact to be resolved by the trier of fact (McDermott v Torre, 56 NY2d 399). One such issue is whether the treatment given for this period related to the injury complained of. However, it is clear that were such a finding made in a malpractice action, the toll of the Statute of Limitations would apply to the 90-day period in which a notice of claim must be filed against the city. (Marabello v City of New York, supra.) Extending such holding, this court finds that where an injury occurs in a medical facility and the plaintiff remains under the continuous treatment of that same facility for such injury, the Statute of Limitations is tolled for the continuous period of time for which such treatment is rendered. It is unreasonable to require a hospitalized patient whose health and well-being are totally dependent upon the care and treatment *332 given her by the hospital and its staff, to serve a notice of claim upon the hospital while an inpatient at that facility. Such an act is inherently disruptive to the treatment to be administered and completely undermines the confidence and trust vital to the health care giver-patient relationship.
It is also noted that the plaintiff acted promptly upon her discharge from the hospital and that the defendant has not been prejudiced by plaintiff’s inaction inasmuch as defendant had actual notice of the incident on the day it happened and had ample opportunity to investigate the claim.
Accordingly, the defendant’s motion to dismiss for plaintiff’s failure to file a timely notice of claim as a matter of law is denied. Issues of fact remain for resolution at trial regarding the continuous treatment rule which this court holds, if applicable, would toll the relevant Statute of Limitations.