Michael J. **PEARCE** and Linda Pearce, Plaintiffs,

v.

Michael J. **FEINSTEIN, M.D.** and Genesee Hospital, Defendants.

No. Civ. 87–24L.

United States District Court, W.D. New York.

Dec. 20, 1990.

Sheldon M. Markel, Sheldon M. Markel Associates, Buffalo, N.Y., for Michael J. Pearce and Linda Pearce.

Thomas C. Burke, Osborn, Reed, VanDe-Vate & Burke, Rochester, N.Y., for Genesee Hosp.

## DECISION AND ORDER

LARIMER, District Judge.

### FACTS

Plaintiffs sued Dr. Michael J. Feinstein and Genesee Hospital in connection with plaintiff Michael J. Pearce's treatment and care at the hospital in 1984. Plaintiffs allege that Genesee Hospital was at fault in furnishing Dr. Feinstein with a defective catheter manufactured by the C.R. Bard Company. Plaintiffs contended that the hospital knew or should have known that the catheter was defective since it had received recall notices from the manufacturer identifying the defective catheters.

The parties tried the case before a jury in this court from November 7 through November 16, 1990. The jury returned a verdict of no cause of action against Dr. Feinstein. Genesee Hospital (defendant), however, was found liable and the jury awarded damages of approximately $75,000. Because Genesee Hospital's percentage of fault for all damages exceeded 50 percent, judgment was entered against the hospital for the full amount of the jury award.

Defendant now moves for an order setting aside the verdict and judgment and entering judgment in favor of the hospital, or, in the alternative, granting a new trial. For the reasons stated herein, defendant's motion is denied.

### DISCUSSION

*A. JNOV Standard*

The standard in this circuit for granting a judgment n.o.v. has been exhaustively stated by the Court of Appeals in *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 167–68 (2d Cir.1980) and quoted with approval in *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 121–22 (2d Cir.1984):

The trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all

reasonable inferences), the trial court should grant a judgment n.o.v. ... only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

## B. The Merits

### 1. Need for Expert Testimony

The issue presented on this motion concerns the need for expert testimony on the standard of care required of hospitals in dealing with product recalls. Defendant contends that the court erred in submitting the case to the jury without plaintiff having adduced any expert testimony as to the accepted practice of hospital materials management departments relating to product recalls within the community. Defendant further maintains that the court compounded its error by improperly questioning a witness and by erroneously instructing the jury.

This claim by Genesee Hospital that plaintiffs' case was defective for lack of expert proof was raised for the first time at the close of plaintiffs' case. The court denied the motion for a directed verdict and submitted the case to the jury without any expert testimony concerning materials management procedures.

■ It is a well-established principle of New York law that "[t]o maintain an action for injuries ... sustained while under the care and control of a ... medical facility, a party may proceed upon a theory of simple negligence or upon the more particularized theory of medical malpractice." *Hale v. State of New York*, 53 A.D.2d 1025 (4th Dep't), *appeal denied*, 40 N.Y.2d 804, 387 N.Y.S.2d 1032, 356 N.E.2d 484 (1976). "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of the facts." *Miller v. Albany Medical Ctr. Hospital*, 95 A.D.2d 977, 978, 464 N.Y.S.2d 297 (3d Dep't 1983). To establish a prima facie case of malpractice, expert testimony is normally necessary to allow the jury to determine the proper standard of care. *See Kerker v. Hurwitz*, 558 N.Y.S.2d 388, 390 (4th Dep't 1990).

Defendant views this as a malpractice case. Its position is that, absent expert testimony that hospitals in the Rochester community followed and accepted a practice of checking newly purchased medical products against previously received recall notices, the jury had no basis from which to find that the Genesee Hospital deviated from the community standard of care. Indeed, maintains defendant, uncontradicted expert testimony was introduced to the contrary through the witness Thomas Tod Timmel.

■ New York courts, in determining whether a hospital's liability should be assessed by the malpractice or simple negligence standard, often have distinguished between acts that are medical in nature and those that are "administrative." *See, e.g., Bleiler v. Bodnar*, 65 N.Y.2d 65, 489 N.Y.S.2d 885, 479 N.E.2d 230 (1985); *McCormack v. Mount Sinai Hospital*, 85 A.D.2d 596, 444 N.Y.S.2d 702 (2d Dep't 1981); *Mossman v. Albany Medical Ctr.*, 34 A.D.2d 263, 311 N.Y.S.2d 131 (3d Dep't 1970). The jury may assess the reasonableness of administrative conduct without the aid of expert testimony, because such a determination typically does not involve considerations of medical diagnosis or treatment, or other scientific matters. *See Borrillo v. Beekman Downtown Hospital*, 146 A.D.2d 734, 735, 537 N.Y.S.2d 219 (2d Dep't 1989).

The plaintiff in *Bleiler*, suing for negligent treatment of an eye injury, alleged that the defendant hospital had negligently failed to promulgate adequate procedures and rules for taking medical histories in the emergency room. The Court of Appeals found that, for statute of limitations pur-

poses, the case sounded in pure negligence rather than malpractice. It was ruled that, although, in a general sense, every act of a hospital contemplates the provision of medical care, not every instance of a hospital's negligent conduct would constitute malpractice. *See* 65 N.Y.2d at 73, 489 N.Y. S.2d 885, 479 N.E.2d 230. The court observed in dictum that claims of a hospital's failure to select competent doctors or furnish functioning equipment are closer to negligence than malpractice. *See id.; see also Holtfoth v. Rochester General Hospital,* 304 N.Y. 27, 32, 105 N.E.2d 610 (1952) (hospital's failure to provide safe, functioning wheelchair is negligent performance of administrative act); *Gould v. New York City Health & Hospitals Corp.,* 128 Misc.2d 328, 331, 490 N.Y.S.2d 87 (Sup.Ct. N.Y.Co.1985) (furnishing of defective equipment and failing to secure patient in bed are acts of negligence, performed by employees whose routine work required no medical skill or training).[1]

■ In the court's view, the challenged conduct in this case clearly was of an administrative rather than medical character.

The alleged misconduct in this case concerns the hospital's failure to enact or follow procedures for determining whether newly purchased products previously had been recalled by the manufacturer.

The cases of *Hoemke v. New York Blood Center,* 912 F.2d 550 (2d Cir.1990) and *Zellar v. Tompkins Community Hospital, Inc.,* 124 A.D.2d 287, 508 N.Y.S.2d 84 (3d Dep't 1986), which were not cited by the parties, are distinguishable. In *Hoemke,* the Second Circuit held that a hospital's alleged failure to institute procedures that would have allowed a patient requiring a transfusion to receive blood from known donors sounded in malpractice rather than negligence. In *Zellar,* a patient injured while attempting to walk from her bed to the bathroom alleged the hospital's negligence in failing to provide a bedpan at bedside and in not responding to the patient's activation of a call device. Again, the court applied the malpractice, rather than the negligence standard.

Each of these cases involve alleged failures by hospitals to enact proper procedures, but the procedures in question relate much more directly to patient care, and hence to medical science, than would those at issue here. Defendant's suggestion that the field of materials management is so specialized as to require expert testimony could apply with equal force to any industry, and is tantamount to stating that a jury requires expert testimony on supermarket management in order to assess whether a banana peel left on the floor of the produce section is unsafe. A jury can, and in this case did, decide on the basis of common experience that a hospital acts unreasonably in failing to ensure that materials it furnishes for physicians' use have not been recalled because of known defects.

Accordingly, I find that the allegation against the hospital in this case is one of simple negligence, and therefore that the jury did not require the aid of expert testimony to reach a proper verdict.

■ The fact that expert testimony was produced by defendant does not alter my conclusion. The jury in an ordinary negligence case remains free to discredit or completely disregard the testimony of an expert witness. *See Perma Research & Development Co v. Singer Co.,* 402 F.Supp. 881, 897 (S.D.N.Y.1975), *aff'd,* 542 F.2d 111 (2d Cir.), *cert. denied,* 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976). Moreover, in a non-malpractice case, evidence that a defendant acted in conformity with an industry standard is not conclusive

---

1. New York law is replete with other examples of conduct found to be administrative. *See Bing v. Thunig,* 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3 (1957) (leaving of inflammable substance spilled on sheets during operation); *Dillon v. Rockaway Beach Hospital,* 284 N.Y. 176, 30 N.E.2d 373 (1940) (electric light left burning under sheets by hospital attendant); *Phillips v. Buffalo Gen'l Hospital,* 239 N.Y. 188, 146 N.E. 199 (1924) (applying scalding hot water bottle to patient); *Coursen v. New York Hospital–Cornell Medical Ctr.,* 114 A.D.2d 254, 499 N.Y.S.2d 52 (1st Dep't 1986) (hospital attendant's failure to accompany hernia patient into bathroom); *Necolayff v. Genesee Hospital,* 270 A.D. 648, 61 N.Y. S.2d 832 (1946) (mistakenly administered blood transfusion), *aff'd,* 296 N.Y. 936, 73 N.E.2d 117 (1947).

**312**

on the negligence issue. The jury may still decide that the industry as a whole lags behind a standard of reasonable care, and may thus find the defendant negligent. *See Tug Ocean Prince, Inc. v. United States,* 584 F.2d 1151, 1156–57 (2d Cir. 1978), *cert. denied,* 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979). In this case, the jury was instructed on this principle of law without objection from any party.

■ Applying the judgment n.o.v. standard set out above, I find that, viewing the evidence in a light most favorable to plaintiffs, ample evidence exists in the record from which the jury could have concluded that defendant acted negligently. Defendant conceded at trial that it had received notice of the recall in 1978. Moreover, although the proof was insufficient to raise a presumption of mailing, evidence concerning the 1983 recall was certainly sufficient to allow a jury to infer that a notice had been received then as well. The jury could thus have found that, notwithstanding receipt of two recall notices, the hospital furnished the catheter to Dr. Feinstein for his use in treating plaintiff. The jury could properly decide that such conduct evinced a lack of due care.

### 2. Court's Questioning/Jury Charge

Defendant also maintains that the court, in questioning the witness Timmel, improperly suggested the possibility that some procedure for checking new materials against past recall notices might exist. Absent any factual or expert testimony as to the feasibility or propriety of such a procedure, defendant contends that the court laid the groundwork for a jury verdict based on sheer conjecture.

■ The trial judge "need not sit like a 'bump on a log' throughout the trial." *United States v. Pisani,* 773 F.2d 397, 403 (2d Cir.1985). The court, in meeting its responsibility to ensure that facts are presented clearly to the jury, may question a witness to clarify ambiguities, correct misstatements or obtain information necessary to make rulings. *See United States v. Mazzilli,* 848 F.2d 384 (2d Cir.1988).

■ The court's brief questioning of the witness Timmel was a proper attempt to clarify matters for the jury. The questions did not indicate any belief as to the witness' credibility or any opinion on the factual matters in issue. There is no basis for judgment n.o.v. or for a new trial on these grounds.

### 3. Stay of Execution of Judgment

Defendant has requested that the court stay execution on the judgment for thirty days from the date of this order, without requiring defendant to post a bond. For the same reasons articulated by defendant in its earlier motion to stay execution pending disposition of the present motion, the court grants the request.

### CONCLUSION

For the reasons described above, defendant's motion for judgment n.o.v. is hereby denied. Execution of the judgment is stayed for 30 days from the date of this order. No bond is required.

IT IS SO ORDERED.