IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0783
════════════
 
 
Irving W. Marks, 
Petitioner,
 
v.
 
St. Luke’s Episcopal Hospital, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued September 
11, 2008
 
 
Justice Medina delivered the opinion of 
the Court, in which Chief Justice 
Jefferson, Justice O’Neill, 
Justice Brister, and Justice Green joined.
 
            
Chief Justice Jefferson 
filed a concurring opinion.
 
            
Justice Hecht filed a 
dissenting opinion.
 
            
Justice Wainwright filed a 
dissenting opinion.
 
            
Justice Johnson filed a 
dissenting opinion, in which Justice 
Hecht, Justice Wainwright, 
and Justice Willett joined.
 
            
In this case we must decide whether a hospital patient’s fall, allegedly 
caused by a negligently maintained hospital bed, is a health care liability 
claim under article 4590i of the Revised Civil Statutes.1 Article 4590i, also known as the Medical 
Liability and Insurance Improvement Act, provides that health care liability 
claims, not accompanied by an expert report, may be dismissed with prejudice 180 
days after filing, although a grace period is available under limited 
circumstances. The trial court concluded that the hospital bed claim here was a 
health care liability claim, which it then dismissed because of the patient’s 
failure to file a timely expert report. The trial court also denied the 
patient’s request for a grace period. The court of appeals initially disagreed 
with the trial court, concluding that the patient’s claim was not a health care 
liability claim. See Marks v. St. Luke’s Episcopal 
Hosp., 177 S.W.3d 255, 260 (Tex. App.–Houston [1st Dist.] 2005), 
vacated, 193 S.W.3d 575 (Tex. 2006). Following our remand of the 
case, however, the court affirmed the trial court’s judgment. 229 S.W.3d 396. One justice dissented, arguing that the 
hospital bed claim was in the nature of a premises liability claim rather than a 
health care liability claim. Id. at 403 (Jennings, J., 
dissenting in part). We agree with the dissenting justice and accordingly 
reverse the court of appeals’ judgment and remand the case to the trial 
court.
 I
            
Irving Marks fell and injured himself during his recuperation from back 
surgery at St. Luke’s Hospital. The fall occurred when Marks, while sitting on 
his hospital bed, attempted to use the bed’s footboard to push himself up to a 
standing position. Unfortunately, the footboard came loose, causing Marks to 
fall. Marks sued the Hospital, alleging several acts of negligence, including: 
(1) failing to train and supervise the nursing staff properly, (2) failing to 
provide him with the assistance he required for daily living activities, (3) 
failing to provide him with a safe environment in which to recover, and (4) 
providing a hospital bed that had been negligently assembled and maintained by 
the hospital’s employees.
            
The trial court concluded that Marks’s petition asserted health care 
liability claims as defined under the Medical Liability and Insurance 
Improvement Act. See Tex. Rev. Civ. Stat. art. 4590i § 1.03(a)(4) (defining health care liability claim).2 This Act requires that health care 
liability claims be substantiated by a timely filed expert report. Id. § 13.01(d). Because Marks failed to file a timely 
expert report, the trial court granted the Hospital’s motion to dismiss.
            
The court of appeals initially reversed, concluding that Marks’s 
allegations concerned “an unsafe condition created by an item of furniture” and 
thus related to “premises liability, not health care liability[.]” Marks, 177 S.W.3d at 
259. The Hospital appealed, filing its petition for review a few days 
before we held, in Diversicare General 
Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex. 2005), that a patient’s claims 
against a nursing home for inadequate supervision and nursing services were 
health care liability claims.
            
After full briefing, we granted the Hospital’s petition. Rather than 
parse through Marks’s claims, however, we vacated the court of appeal’s judgment 
without reference to the merits and remanded for the court of appeals to 
consider the nature of these claims in light of Diversicare. St. Luke’s 
Episcopal Hosp. v. Marks, 193 S.W.3d 575 (Tex. 2006) (per curiam). Following our remand, a divided court of 
appeals affirmed the trial court’s dismissal for want of a timely expert report, 
concluding that Marks had asserted only health care liability claims. 229 S.W.3d at 402. One justice dissented in part, urging that 
Marks’s fourth claim concerning the defective footboard was a premises-liability 
claim rather than a health care liability claim under the Medical Liability and 
Insurance Improvement Act. Id. at 403 (Jennings, J., 
dissenting in part).
II
            
The Medical Liability and Insurance Improvement Act of 1977 was the 
Legislature’s response to a crisis in the cost and availability of medical 
malpractice insurance in Texas. The Legislature perceived that an inordinate 
increase in the frequency and severity of health care liability claims had 
caused the crisis. Tex. Rev. Civ. Stat. art. 4590i § 1.02(a)(1)-(5). The Legislature also found that this insurance 
crisis had adversely affected the cost and delivery of medical and health care 
in Texas. Id. § 1.02(a)(6)-(9). To address the 
problem, the Legislature sought to reduce the “frequency and severity of health 
care liability claims through reasonable improvements and modifications in the 
Texas insurance, tort, and medical practice systems[.]” 
Id. § 1.02(b)(1). The Legislature’s 
modifications included a damages cap, a shortened limitations period, and 
heightened filing requirements for health care liability claims. See Diversicare, 185 S.W.3d at 
846-47.
            
The Act defines a “health care liability claim” as “a cause of action 
against a health care provider or physician for treatment, lack of treatment, or 
other claimed departure from accepted standards of medical care or health care 
or safety” proximately resulting in a patient’s injury or death. Tex. Rev. Civ. Stat. art. 4590i § 1.03(a)(4). The Act does not define safety, although it does define 
other terms, including “health care provider,” “physician,” “medical care,” and “health care.” Id. § 1.03(a)(2)-(4), (8).
            
These definitions indicate that physicians provide medical care, and 
health care providers furnish other health care services. “Medical care” is 
defined as the practice of medicine, including the diagnosis and treatment by a 
licensed physician. Id. § 1.03(a)(6). “Health 
care” is defined more broadly to include “any act or treatment performed or 
furnished, or which should have been performed or furnished, by any health care 
provider for, to, or on behalf of a patient during the patient’s medical care, 
treatment, or confinement.” See id. § 1.03(a)(3). Hospitals are expressly included in the definition of 
“health care provider.” Id. § 1.03(a)(3).
            
Although Diversicare primarily concerned 
a claimed departure from accepted standards of health care, we mentioned safety 
and the absence of any statutory definition for the term. Diversicare, 185 S.W.3d at 
855. We observed that the inclusion of accepted standards of safety 
expanded the statute’s scope beyond what it would have been had the statute only 
covered medical care and health care. Because the statute offered no definition 
of safety, we suggested its commonly understood meaning, that is, “‘untouched by 
danger; not exposed to danger; secure from danger, harm or loss.’” Id. 
(quoting Black’s Law Dictionary 
1336 (6th ed. 1990)). The term’s meaning, however, was ultimately unnecessary to 
our decision, and so we left unresolved its contextual meaning, as well as its 
relationship to the other defined terms of medical care and health care. See 
id. The meaning of this term is squarely presented here as the parties 
dispute what the Legislature intended to include as a health care liability 
claim involving a “departure from accepted standards of . . . safety[.]” Tex. Rev. 
Civ. Stat. art 4590i § 1.03(a)(4).
            
Marks contends that safety must be read narrowly to include only safety 
concerns directly related to the patient’s care or treatment. The Hospital, on 
the other hand, argues that the term should be read broadly to include any 
patient injury negligently caused by an unsafe condition at a health care 
facility. Even if the definition is not this broad, the Hospital alternatively 
argues, it should include equipment used in the patient’s care, such as the 
hospital bed here.
III
            
To determine the meaning of safety in the context of this Act, we begin 
with established principles of statutory construction. The first and overarching 
principle is that we give effect to legislative intent. See Tex. Gov’t Code § 312.005; see 
also Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 383 (Tex. 
2000). When interpreting a statute, we read words and phrases in context and 
construe them according to the rules of grammar and common usage. Tex. Gov’t Code § 311.011(a). Words that are 
not defined are given their ordinary meaning. Fitzgerald v. Advanced Spine 
Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 
1999). When possible, all words are given effect and none of the statute’s 
language is treated as surplusage. Cont’l Cas. Ins. Co. v. Functional Restoration Assocs., 19 
S.W.3d 393, 402 (Tex. 2000). Thus, the terms medical care, health care, and 
safety should add meaning to the statute; none of the terms should be 
disregarded, discounted, or dismissed. See Meritor 
Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 
89-90 (Tex. 2001).
            
The Legislature’s purpose in article 4590i is clearly stated, to remedy 
“a medical malpractice insurance crisis” in Texas and its “material adverse 
effect on the delivery of medical and health care services in Texas[.]” Tex. Rev. Civ. Stat. 
art. 4590i § 1.02(a)(5)-(6). This 
concern pervades the statute, which is replete with references to medical 
liability, health care, and malpractice, all of which implicate medical or 
health care judgments made by professionals. See, 
e.g., id. § 13.01(r)(5)-(6) 
(requiring expert to have knowledge of medical diagnosis, care, and 
treatment).
            
By comparison, neither the statute nor the historical background suggests 
that physicians or health care providers were similarly challenged when 
obtaining commercial general liability insurance coverage for ordinary, 
non-medical accidents on their premises. The Legislature was responding only to 
a medical-malpractice insurance crisis, and medical malpractice insurance 
generally does not cover premises liability claims. See, e.g., 
N. Am. Speciality Ins. Co. v. Royal Surplus Lines Ins. 
Co., 541 F.3d 552, 561 (5th Cir. 2008) (recognizing that commercial 
general liability insurance policies generally exclude professional breaches 
from coverage).
            
All patient injuries in a health care setting, regardless of cause, may 
be said to implicate patient safety in the broader sense, but not all patient 
injuries involve malpractice. Given the statute’s objective and the 
Legislature’s express concern, the Legislature evidently did not intend to 
define safety as broadly as the Hospital proposes. Moreover, such an expansive 
interpretation conflicts with the Legislature’s express intent that the statute operate to control medical-malpractice insurance 
costs without unduly restricting a patient’s rights. See Tex. Rev. Civ. Stat. art. 4590i § 1.02(b)(3); see also O’Reilly v. Wiseman, 107 S.W.3d 699, 
707 n.12 (Tex. App.—Austin 2003, pet. denied). We accordingly reject the 
Hospital’s contention that a health care liability claim includes any patient 
injury negligently caused by an unsafe condition at a health care facility.
 
            
We said as much in Diversicare, noting 
that there could “be circumstances that give rise to premises liability claims 
in a healthcare setting” and that not every accidental injury to a patient in a 
health care setting would constitute a health care liability claim under article 
4590i. Diversicare, 185 S.W.3d at 854 
(indicating that a health care claim is determined by the nature of the claim, 
not the nature of the defendant). As noted, a health care liability claim is 
defined to include a “claimed departure from accepted standards of medical care 
or health care or safety.” Tex. Rev. Civ. Stat. 
art. 4590i § 1.03(a)(4). Standards 
of medical care or health care are implicated when the negligent act or omission 
is an inseparable or integral part of the rendition of medical services. Diversicare, 185 S.W.3d at 
848-49. Similarly, an accepted standard of safety is implicated under the 
Act when the unsafe condition or thing is an inseparable or integral part of the 
patient’s care or treatment. See id. at 855.
            
In determining whether the plaintiff’s claim is inseparable from the 
rendition of medical services, and thus a health care liability claim, we are 
guided by several overlapping factors. They include (1) whether the specialized 
knowledge of a medical expert may be necessary to prove the claim, (2) whether a 
specialized standard in the health care community applies to the alleged 
circumstances, and (3) whether the negligent act involves medical judgment 
related to the patient’s care or treatment. See Diversicare, 185 S.W.3d at 
847-52. Not surprisingly, these factors confirm the significance that 
medical or professional judgment plays in classifying the claim as one involving 
health care liability.
IV
            
Marks’s original petition asserted four negligence claims against the 
Hospital. The first three—failing to properly train and 
supervise its agents, employees, servants and nursing staff when caring for him; 
failing to provide him with the assistance he required for daily living 
activities; and failing to provide him a safe environment in which to receive 
treatment and recover—are similar to those in Diversicare.
            
In that case, a nursing home resident’s daughter sued on her mother’s 
behalf, alleging the nursing home had been negligent in failing to provide 
enough staff and supervision to prevent her mother from falling on two occasions 
and from being sexually assaulted by another nursing home resident. Id. at 845. The trial court concluded that the 
allegations constituted health care liability claims, dismissing the case 
because the plaintiff had not filed the requisite expert report. See Tex. Rev. Civ. Stat. art. 4590i 
§ 13.01(d), (e). The court of appeals reversed, concluding that the 
sexual-assault claim did not fit the definition of a health care liability 
claim. Rubio v. Diversicare Gen. Partner, Inc., 
82 S.W.3d 778, 783-84 (Tex. App.—Corpus Christi 2002), rev’d, 185 S.W.3d 842 (Tex. 2005). We disagreed, 
however, concluding that all the plaintiff’s claims were based on an alleged 
departure from accepted standards of health care. Diversicare, 185 S.W.3d at 
849. We noted that nursing homes provide services to their residents that 
include supervision of daily activities, routine examinations, monitoring of the 
residents’ physical and mental condition, administering medication, “and meeting 
the fundamental care needs of the residents.” Id. We further noted that 
these services are provided by professional staff, and “[t]he level and types of 
health care services provided vary with the needs and capabilities, both 
physical and mental, of the patients.” Id. at 849-50 (citing Harris v. 
Harris County Hosp. Dist., 557 S.W.2d 353, 355 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ)). We then 
concluded that those services, including the monitoring and protection of the 
patient, as well as training and staffing policies, were “integral components of 
Diversicare’s rendition of health care services[.]” 
Id. at 850. Similarly, Marks’s first three 
claims here, involving patient supervision and staff training, are claims 
implicating professional expertise and the departure from the accepted standard 
of health care. Such claims are health care liability claims subject to the Act. 
Tex. Rev. Civ. Stat. 
art. 4590i § 1.03(a)(4).
            
Marks’s hospital bed claim is different, however, because it does not 
assert a departure from the accepted standards of medical care or health care. 
Instead, Marks alleges that the Hospital was negligent in the bed’s assembly or 
maintenance, or both, and that a defectively attached footboard presented an 
unsafe condition. At its core, Marks’s hospital bed claim involves the failure 
of a piece of equipment. Whether the failure of that equipment qualifies as a 
health care liability claim depends on whether that failure constitutes a 
departure from accepted standards of safety under article 4590i. Id. To 
assist us in answering that question, we consider the various factors indicative 
of professional judgment, that being the equipment’s use and importance in the 
patient’s care or treatment.
            
No evidence shows that the assembly of Marks’s hospital bed involved any 
medical or professional judgment, or that the bed’s footboard or its assembly were related to, or affected by, Marks’s care or 
treatment. To the contrary, Marks presented some evidence that the assembly of 
the hospital bed was solely the responsibility of the Hospital’s maintenance 
staff. Presumably, tasks performed by the maintenance staff do not require any 
specialized health care knowledge, and evaluation of whether those tasks were 
performed negligently would not require expert medical testimony. Other 
jurisdictions have, for the most part, found claims based on injuries incurred 
when a hospital fixture or piece of equipment breaks due to negligent assembly, 
maintenance, or repair to sound in ordinary, rather than medical, negligence.3
            
A cause of action alleges a departure from accepted standards of safety 
within the Act’s meaning when the unsafe condition is an inseparable or integral 
part of the patient’s care or treatment. An unsafe condition, like a negligent 
act or omission, is inseparable from the rendition of medical or health care 
services when the relationship between the two is significant and direct, and 
thus involves professional judgment. The following cases illustrate this 
point.
            
 In Hector v. Christus Health Gulf 
Coast, the court of appeals held that a patient’s action for injuries in a 
fall from an operating table during surgery was based on “an alleged departure 
from accepted standards of safety” under article 4590i. 175 
S.W.3d 832, 835-36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). 
The patient argued that the operating table was under the hospital’s control and 
that the accident involved an administrative or routine use rather than medical 
care. Id. at 836. The court of appeals agreed in 
theory with the “distinction between hospital workers that were health care 
providers, such as nurses and doctors, and hospital workers that were not, such 
as cooks or electricians.” Id. But the court concluded the distinction 
was irrelevant because “any person in the operating room at the time of Hector’s accident would necessarily have been considered a 
health care provider.” Id. The distinction is relevant in this case, 
however, because the hospital workers responsible for assembling Marks’s bed, 
identified by the hospital nurses as the maintenance team, would not have been 
considered health care providers when doing so.
            
In another case, a patient sued a hospital for a foot injury caused by 
stepping on a sharp paint chip while showering in preparation for surgery. Shults v. Baptist St. Anthony’s Hosp. Corp., 
166 S.W.3d 502, 503 (Tex. App.—Amarillo 2005, pet. denied). The patient alleged 
negligence based both on the hospital’s failure to maintain and keep safe its 
shower as well as on the hospital’s treatment of his foot injury. The court 
rejected the argument that the negligence claims based on the condition of the 
hospital shower constituted claims resulting from departures from accepted 
standards of safety under article 4590i:
 
We agree 
with [hospital’s] characterization of [patient’s] claims as involving two 
distinct theories of recovery, one based upon premises liability and the other 
on medical negligence. Personal injury claims resulting from departures from 
accepted standards of safety may be included within the scope of article 4590i, 
but such departures must be inseparable parts of the rendition of medical 
services and the standards of safety within the health care industry to be 
covered by the Act. We do not believe that the presence of a sharp paint chip in 
the shower of [patient’s] hospital room could be considered in any way an 
inseparable part of the medical services rendered to [patient].
 
Id. at 505.
            
The shower was, however, taken in preparation for surgery at a 
physician’s instruction. Id. at 503. In that 
sense, it was a functional part of the surgical services provided by the 
hospital, just as the footboard attached to the hospital bed here was a 
functional part of the morphine-treatment and recovery services provided to 
Marks. The source of the negligence in both cases, however, is not directly 
related to the rendition of any medical or health care services, but instead is 
incidental, occurring in the course of the Hospital’s general maintenance duties 
which do not involve health care professionals or the exercise of any medical or 
professional judgment.
            
There are certainly circumstances in which the assembly or use of a 
hospital bed might involve professional judgment, the evaluation of which would 
likely require expert testimony. For instance, a health care provider might 
determine that a patient’s condition called for restraints and that side rails 
attached to the bed would suffice.4 Thus, the failure of a part of a hospital 
bed specifically ordered by a physician or health care provider and integral to 
the patient’s care or treatment might implicate article 4590i. See, e.g., 
Espinosa v. Baptist Health System, No. 04-05-00131-CV, 2006 WL 2871262 (Tex. 
App.–San Antonio Oct. 11, 2006, pet. denied) (mem. 
op.) (holding that patient injured while using an 
overhead bed-frame device or trapeze authorized as part of patient’s medical 
care and installed by a nurse and orthopedic technician was a health care 
liability claim). But when a piece of hospital equipment is unrelated to any 
professional judgment and is merely incidental to the patient’s care, its 
alleged unsafe condition does not implicate article 4590i. We conclude that the 
negligence claim based on the defectively assembled or maintained hospital bed 
in this case is not a health care liability claim to which article 4590i 
applies.
            
Justice Johnson’s 
dissent, however, questions that conclusion as permitting Marks to convert a 
health care liability claim into an ordinary negligence claim by mere pleading. 
The dissent submits that “no matter how Marks pleads his case, the substantive 
facts implicate questions about whether St. Luke’s met accepted standards of 
health care and safety [as to its patient].” ___ S.W.3d at ___ 
(Johnson, J. dissenting). We disagree, and our disagreement concerns the 
essence of a health care liability claim.
            
Justice Johnson’s 
dissent assumes that a patient’s claim against a hospital must implicate 
accepted standards of health care and safety by definition. But it is not the 
identities of the parties or the place of injury that defines the claim. See 
Diversicare, 185 S.W.3d at 854 (refusing to 
distinguish patient claims “‘simply because the landowner is a health care 
provider’”). Rather, it is the cause of the injury and its relationship to 
medical or professional judgment that determines the claim’s nature and the 
application of the Medical Liability and Insurance Improvement Act. See 
Tex. Rev. Civ. Stat. art 
4590i § 1.03 (a)(2), (4) (defining “health care” and “health care liability 
claim” as act or omission during patient’s medical care, treatment or 
confinement that departs from accepted standards). Thus, injury caused by a 
failure to train and supervise the hospital’s nursing staff or by a failure to 
supervise and assist the patient implicates the Act; that is, it involves a 
departure from accepted standards during a patient’s medical care, treatment, or 
confinement. A claim involving a defective footboard, on the other hand, does 
not appear to implicate any medical or professional judgment5 and was not in this case directly related 
to the patient’s care, treatment, or confinement. Hence, we conclude in this 
case that the injury allegedly caused by the defective footboard was not a 
health care liability claim under the Act.
            
Justice Johnson’s 
dissent also accuses the Court of “conflating standards of safety with standards 
of health care,” but our intention is just the opposite. ___ 
S.W.3d at ___ (Johnson, J. dissenting). “Standards of medical care or 
health care or safety” should each add something to the definition of “health 
care liability claim.” None of these standards should be read so broadly as to 
subsume the others. Thus, standards of medical care and health care implicate 
the acts or omissions of physicians and other health care providers, 
respectively, while standards of safety concern a patient’s exposure to 
unreasonably dangerous or defective conditions or things in the course of 
treatment. The dissent, however, reads safety so broadly as to subsume all 
duties—not only standards of medical care and health care, but also the breach 
of any other duty regardless of its connection to patient care or treatment. 
See ___ S.W.3d at ___ (Johnson, J. dissenting) (noting that “a 
safety-related cause of action is a health care liability claim” whenever a 
patient sues a health care provider or physician for a breach of duty involving 
safety). As we indicated in Diversicare, the 
focus must be on the gravamen of the claim, which is 
not determined merely by the defendant’s status as a health care professional or 
the place of injury. See Diversicare, 185 S.W.3d at 854. We accordingly disagree that article 4590i 
makes every patient’s claim against a health care professional a health care 
liability claim.
V
            
Although we have concluded that Marks’s other negligence claims involving 
patient supervision and staff training are health care liability claims, a 
question remains concerning their dismissal. Marks 
argues that these claims should not have been dismissed because he was 
entitled to additional time to provide an expert report. Article 4590i generally 
requires a claimant to furnish an expert report within 180 days after the filing 
of a health care liability claim. Tex. 
Rev. Civ. Stat. 
art. 4590i, § l3.0l (d). If a 
claimant fails to comply with this requirement, the court is directed, on 
motion, to award appropriate costs and fees and to dismiss the health care 
liability claim with prejudice. Id. § 13.01(e). 
The 180-day period can be extended, however, for good cause and enlarged for 
accidents and mistakes. Id. § 13.01(f), (g). The 
latter enlargement is referenced in the statute as a grace period. Id. § 13.01(g).
            
Marks contends that he was entitled to this 
grace period because his failure to file the expert report on time was an 
accident or mistake within section 13.01(g)’s meaning. That 
section provides for a thirty-day grace period if, after a hearing, the court 
finds that the claimant’s failure to file a timely expert report was a mistake 
or accident rather than intentional or the result of conscious 
indifference.6 After hearing the Hospital’s motion to 
dismiss and Marks’s motion for a grace period, the trial court found that 
Marks’s failure was not an accident or mistake and dismissed the suit. We review 
that dismissal under an abuse of discretion standard. Am. 
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 
46 S.W.3d 873, 875 (Tex. 2001).
            
In support of Marks’s motion for a grace period, Marks’s attorney, James 
E. Doyle, provided his affidavit. Doyle averred that he was Marks’s second 
attorney, becoming lead counsel about seven months after the first attorney 
filed the case. Doyle further averred that he and Marks’s first attorney 
“understood the case to be an ordinary negligence case, not a health care 
liability claim” at that time. According to Doyle’s affidavit, it was only after 
discovery that he determined that Marks also had a potential health care 
liability claim, causing him to amend the pleadings and provide an expert 
report. This report was provided more than 500 days after the filing of Marks’s 
original petition.
            
The amended petition divided Marks’s claims under headings of 
“Negligence” and “Premises Liability.” The original petition had lumped all claims under a single negligence heading. In the 
amended pleading, Marks included complaints about his bed, his care, and his 
supervision under the “Negligence” heading. Under the “Premises Liability” 
heading, Marks complained about the condition of the hospital bed. Doyle avers 
that he “believed that the case presented claims sounding only in ordinary 
negligence” until the time he filed the amended pleading.
            
In our view, no significant difference exists between the original and 
the amended pleading. The underlying factual complaint in both concern the same 
set of circumstances: inadequate care and supervision by the Hospital’s 
professional staff and a dangerous hospital bed. “It is well settled that a 
health care liability claim cannot be recast as another cause of action to avoid 
the requirements of [article 4590i].” Diversicare, 185 S.W.3d at 
851. Determining whether a pleading states a health care liability claim 
thus depends on its underlying substance, not its form. Doyle’s affidavit does 
not clearly indicate what caused him to recognize for the first time that his 
client had a health care liability claim.
            
Equally significant, however, is the absence of any evidence explaining 
the first attorney’s failure to furnish an expert report during the first seven 
months he represented Marks. Doyle’s affidavit suggests that the first attorney 
also mistakenly believed that the original petition did not implicate article 
4590i. According to the affidavit, Doyle’s belief is based on his review of the 
case file he inherited. Affidavits, however, must be based on personal 
knowledge, not supposition. See Tex. R. Evid. 602 (“A witness may not 
testify to a matter unless . . . the witness has personal knowledge of the 
matter.”). An affidavit not based on personal knowledge is legally insufficient. 
Kerlin v. Arias, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). Because Doyle had no personal knowledge of 
the first lawyer’s intent, and the first lawyer did not provide his own 
affidavit explaining his failure, there is no evidence of mistake or accident 
and thus no basis for the requested grace period. Accordingly, the trial court 
did not abuse its discretion in denying Marks’s motion for a grace period under 
section 13.01(g) and did not err in dismissing Marks’s health care liability 
claims. See Tex. Rev. Civ. Stat. 
art. 4590i, § 13.01(e)(3) (stating 
that dismissal is “with prejudice to the claims refiling”).
* 
* *
            
To summarize, article 4590i does not apply to Marks’s claim concerning 
the defective hospital bed footboard because that claim concerns ordinary, not 
medical, negligence and thus is not a health care liability claim. Marks’s other claims alleging negligent care and supervision 
are health care liability claims to which article 4590i does apply. Finally, 
Marks is not entitled to have the period for filing an expert report enlarged 
under the grace period provision of article 4590i because he has not established 
that the failure to comply with the statute was a mistake or accident.
            
The judgment of the court of appeals is affirmed in part and reversed in 
part, and the cause is remanded to the trial court for further proceedings 
consistent with our opinion.
 
 _____________________________
 David 
Medina
 Justice
 
 
OPINION DELIVERED: August 28, 
2009







[1] 
See 
Medical Liability and Insurance Improvement Act of Texas, Act of May 30, 1977, 
65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 
2041, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 
884.

[2] 
Article 4590i was repealed after the filing of 
this case. See n.1 supra. Similar 
medical liability legislation is now codified in Chapter 74 of the Texas Civil 
Practice and Remedies Code, affecting actions filed on or after September 1, 
2003. See Tex. Civ. Prac. & Rem. Code §§ 
74.301-.303.

[3] 
See, e.g., Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson, 888 So.2d 782, 789-90 (La. 2004) (holding that 
hospital’s negligence in failing to repair and inspect wheelchair prior to 
returning it to service was ordinary not medical negligence to which state’s 
medical malpractice statute did not apply); Pluard v. Patients Compensation Fund, 705 
N.E.2d 1035, 1037-38 (Ind. App. 1999) (holding that injuries incurred when 
surgical lamp inadequately attached to the wall fell on patient not covered by 
Indiana’s Medical Malpractice Act); Harts v. Caylor-Nickel Hosp., Inc., 553 N.E.2d 874, 879 (Ind. 
App. 1990) (concluding that injury incurred when bed rail collapsed, causing 
patient to fall, were premises liability claims not covered by Medical 
Malpractice Act); but see Prater v. Smyth County Cmty. Hosp., No. 93-4050, 1995 WL 1055761, at *2-3 (Va. 
Cir. Ct. Jan. 30, 1995) (not designated for publication) (holding that a bed 
rail collapse while taking patient’s medical history was an integral part of the 
health care treatment and covered by Virginia’s Medical Malpractice 
Act).

[4] 
See, e.g., Bryant v. Oakpointe Villa 
Nursing Centre, Inc., 684 N.W.2d 864, 867 (Mich. 2004) (determining that 
claims based on nursing home’s failure to recognize the risk posed by the 
configuration of bed rails on a hospital bed sounded in medical malpractice); 
Bell v. West Harrison County Dist., 523 So.2d 1031, 1033 (Miss. 1988) 
(determining that a patient’s claims arising from a nurse’s failure to raise 
side rails on a hospital bed constituted medical malpractice, rather than 
ordinary negligence, claims because “[a] nurse’s decision as to whether or not 
bed rails should be utilized entails a degree of knowledge concerning the 
subject patient’s condition, medication, history, etc.”); Lenny v. Loehmann, 433 N.Y.S.2d 135 (N.Y. App. Div. 1980) 
(concluding that a physician’s alleged negligence in failing to instruct that 
bed’s side rails be raised, or in failing to check condition of the side rails 
after they had been put up, or in failing to supervise patient’s movements to 
and from bed sounded in medical malpractice rather than ordinary negligence); 
cf. Gould v. N.Y. Cty. Health and Hosp. Corp., 
490 N.Y.S.2d 87, 88-89 (N.Y. Sup. Ct. 1985) (concluding 
that a plaintiff’s claim that hospital bed side railings “were defective and not 
properly raised” constituted an ordinary negligence claim).
 

[5] 
Justice Wainwright’s dissent agrees that Diversicare did not define safety and that the proper 
focus when addressing standards of safety should be on “whether medical judgment 
was employed in the equipment’s use and its importance to the patient’s care.” 
___ S.W.3d at ___ (Wainwright, J. dissenting). His 
apparent disagreement with the Court concerns the defective footboard’s 
significance in the patient’s care and treatment and its relationship to the 
medical or professional judgments made in the case. Justice Hecht’s dissent similarly views the 
defective footboard as an inseparable part of the professional negligence 
claim.
 
 

[6] 
Section 13.01(g) of article 4590i 
provides:
 
Notwithstanding any other provision of this section, if 
a claimant has failed to comply with a deadline [for filing the expert report] 
established by Subsection (d) of this section and after hearing the court finds 
that the failure of the claimant or the claimant's attorney was not intentional 
or the result of conscious indifference but was the result of an accident or 
mistake, the court shall grant a grace period of 30 days to permit the claimant 
to comply with that subsection. A motion by a claimant for relief under this 
subsection shall be considered timely if it is filed before any hearing on a 
motion by a defendant under Subsection (e) of this 
section.